*DELAFIELD AND OTHERS *v.* COLDEN AND OTHERS. [*139]

The object of the law of Congress organizing the board of Florida commissioners, was to ascertain who were entitled to indemnity against the Spanish government; not to investigate all the various equities which might arise as to the distribution of the fund awarded for any particular injury.

Where money was awarded by the Florida commissioners upon a memorial of one of two joint owners, and the applicant claimed in his memorial the whole to himself, without naming his joint owner, it was held that the joint owner not named, was not bound to put in his claim and contest his right before the commissioners; that the person who received the money awarded, was a trustee, and accountable in equity to the real parties interested in the fund.

Where the executors, who have no interest in the question, are made defendants in Chancery, they are entitled to their costs out of the fund.

ON the 14th of March, 1798, John Delafield, an insurance broker, and John B. Church, an insurer, in the city of New York, entered into a co-partnership in the business of marine insurance, which partnership was to continue until dissolved by mutual consent, or by a written notice from either of the parties. By the partnership articles, the

July 14th.

policies were to be subscribed by Church, in his own name only; and all such policies were to be deemed and taken to be on account of the partnership. All expenses, charges, disbursements, profits and losses incurred concerning the partnership were to be borne and defrayed in equal proportions by the co-partners. On the 29th of November, 1798, Church gave to Delafield written notice, in conformity to the stipulation in the articles, that the partnership would cease after the 31st of December, in the same year; and that he should underwrite on his own account after that time.

Among the policies underwritten by Church during the continuance of the partnership, on which losses happened, were the two following, which alone are the subjects of controversy in this suit: A policy underwritten by Church on the cargo of the schooner Dorchester, the 17th of April, 1798, in the sum of $1,000; and also underwritten by George Knox, David Smith and others, in the sum of $3,000. And another policy, dated on the 27th *of November, 1789, on the brig Eagle, Churchill master, underwritten by Church in the sum of $1,000, and by divers other persons in the sum of $4,000. On the 11th of January, 1799, after the dissolution of the partnership, Church underwrote another policy on the freight of the brig Eagle, in the sum of $1,000, which policy was also underwritten by other persons in the sum of $4,000. The Dorchester was carried into a Spanish port and condemned, with her cargo, in July, 1798. On the 6th of August, 1798, the insurers accepted the abandonment, and agreed to pay the loss; and the assured assigned all his interest to the underwriters. The brig Eagle was also carried into a Spanish port and condemned; and the insurers, both on the brig and her freight, accepted the abandonment, and the assured assigned all their interest to John Ferrers, in trust for the underwriters, in proportion to the several sums subscribed by them respectively. Ferrers died in December, 1813, and Church died in 1816, insolvent and intestate. Delafield

lived until the 3d of July, 1824. The executors of Ferrers, in June, 1822, in consequence of an agreement between him and the underwriters upon the cargo of the Dorchester, presented a memorial to the commissioners under the Florida treaty, in the name of George Knox and David Smith, two of the underwriters, in behalf of themselves and the others, setting out the insurance, condemnation, abandonment and assignment for the benefit of the underwriters, and also setting out, among other things, the interest of Mrs. Bunner as the administratrix of Church, but without noticing the partnership, or the claim of Delafield as the surviving partner or otherwise. The claim contained in the memorial was allowed; and the defendant Colden, as one of the executors of Ferrers, in pursuance of the award of the commissioners, received for the share of Church's subscription to the policy, $700 94, over and above his charges and expenses in obtaining the allowance and payment of the claim.

In March, 1823, the executors of Ferrers also presented another memorial to the Florida commissioners, setting forth the insurances on the brig Eagle and her freight; and the *condemnation and abandonment, and the assignment to Ferrers for the use of the underwriters; and setting out the claim of the administratrix of Church, but without noticing the partnership, or the claim of Delafield as surviving partner or otherwise on the policy on the brig. The claim was allowed, and the defendant Colden also received for the share of Church's subscription to the policy on the brig, $593 12, over and above the charges and expenses in obtaining the same, and the like sum for the subscription of Church to the policy on the freight.

The defendant Colden, as one of the executors of Ferrers, also received, at the same time, other sums which had been allowed under the treaty, on account of other claims upon policies subscribed by Church, the whole amount of which, including the above sums, was $12,487 14, besides disbursements. Of the amounts thus received, he has paid

1828.

Delafield
v.
Colden.

over to the administrators of Church $11,051 14, leaving still in his hands $1,436. The complainants claim the half of the proceeds of Church's insurance on the brig Eagle, and on the cargo of the Dorchester. The administrators of Church claim the whole amount of the proceeds of both.

*M. C. Patterson*, for the complainants, contended that they were entitled to the whole of the moneys in the hands of the defendant Colden, John Delafield having survived John B. Church; that the legal interest in partnership property passes to the surviving partner; (*Peters' admr.* v. *Davis*, 7 Mass. Rep. 257;) that the payment by Colden to the administrators of Church was no satisfaction to Delafield or his executors; (*Wallace* v. *Fitzsimmons*, 1 Dallas, 250;) and that the defendants, Bunner and wife, ought to pay the costs; (*Adair* v. *Shaw*, 1 Sch. & Lef. 280.)

*Dunlap and J. A. Hamilton*, for Bunner and wife, contended that the complainants' remedy was at law; that the legal title to the moneys was in Church; that the rule of survivorship did not apply; that Delafield forfeited all title to any part of the moneys, by not making his claim before [*142] the *commissioners; and that the statement in the bill was not broad enough to reach the relief sought.

*C. Graham*, for the executors of Ferrers, contended that they were bound to appear, and were therefore entitled to costs out of the fund. (1 John. Ch. R. 473, 508; *Morrel and others* v. *Dickey*, 1 John. Ch. R. 153; *Goodrich* v. *Pendleton*, 3 John. Ch. R. 520; *Rodgers and others* v. *Ross*, 4 John. Ch. R. 608; *Masters* v. *Rashley*, 1 Ves. jun. 205; *Attorney-General* v. *City of London*, 1 Ves. jun. 246.)

THE CHANCELLOR:—The preliminary question which has been raised as to the admissibility of the transcript of the broker's books kept by Delafield, and which transcript is in the handwriting of his deceased clerk, it is not neces-

sary for me to consider; and I lay the evidence derived from those books entirely out of the question, in the decision of this cause. Independent of these books, there is no evidence that Delafield paid the loss upon the brig Eagle, or upon the cargo of the Dorchester. On the other hand, there is no evidence that Church ever paid the same, or any part thereof. In the absence of all proof on the subject, the fair presumption is, that both losses were paid out of the partnership funds; and in that case, it is perfectly immaterial which partner actually paid the loss. By the indorsement on the back of Delafield's bond, which indorsement was signed by both of the partners, it appears that as late as the 1st of November, 1806, nearly eight years after the dissolution of the partnership and more than seven after the adjustment of the loss under the last policy, the partners had a settlement of accounts, of what kind does not distinctly appear; although from the memorandum indorsed on the bond, I think it was not the partnership account. But after a lapse of thirty years from the dissolution of the partnership, it may fairly be presumed that all the partnership accounts were closed previous to the time of the indorsement on the bond. There could be no reason at that time for leaving this part of the partnership accounts open. Although a nominal claim existed against the Spanish government, neither party could then *have had any reasonable expectation of receiving indemnity. There can, therefore, be no doubt of the equitable right of the executors of Delafield to receive their moiety of the net proceeds of the amount awarded under the Florida treaty, on account of the underwriting these two policies by Church during the existence of the partnership. But it is contended that the money was awarded by the board of commissioners, on memorials claiming it on account of the administratrix of Church alone; that Delafield ought to have put in his claim, and contested his right before the commissioners; and that having neglected to do so the award is conclusive against his right.

[*143]

On referring to the treaty, and to the law organizing the board of Florida commissioners, I am satisfied such cannot be the effect of the award. The object of organizing the board, was to ascertain who were entitled to indemnity against the Spanish government. It never could have been intended that the board should investigate all the various equities which might arise as to the distribution of the fund awarded for any particular injury. The persons who have prosecuted these claims, and obtained the money on account of any illegal capture or condemnation by the Spanish authorities, are trustees, and are accountable in equity to the real parties who were entitled to the indemnity awarded by the commissioners. But in this case, the complainants must pay their share of what the administrators of Church agreed to give Mr. Hamilton for his services in obtaining the adjustment of the claim. The whole sum being received by Mr. Colden at the same time, that which has been paid over to the defendant Bunner, must be applied towards the satisfaction of those claims which he was entitled to receive ; and the complainants are entitled to their indemnity, out of the moneys still remaining in the hands of the executors of Ferrers. Those executors having no interest in the question, they are entitled to their costs out of the fund ; and the complainants will, in that case, have their remedy over for those costs, as well as the general costs of the suit, against the other *defendants. But as the administrators of Church ought not to be personally charged with the payment of any costs, and the money in the hands of the executors of Ferrers being sufficient for the purpose, I shall direct that out of the moneys in the hands of such executors, they pay to the complainants the one-half of the net proceeds of the sums received on account of the indemnity of Church upon the brig Eagle, Churchill, master, and upon the cargo of the schooner Dorchester, as stated in the schedule annexed to their answer, after deducting therefrom the share of the expenses and commissions of James A. Hamilton, as specified in the answer of the defendants

[*144]

Bunner and wife, and in the schedule thereto annexed; and that the said executors of Ferrers pay those expenses and commissions to the said Hamilton, or to the defendant Bunner, for his use; and that out of the other half or residue of the said net proceeds, the said executors of Ferrers retain their own costs of this suit: and that they also pay to the complainants their costs of this suit to be taxed, and pay over the residue thereof to the defendants, Rudolph Bunner and his wife, as the personal representatives of John B. Church, deceased.